## Commonwealth *v.* Rankin et al., Appellants (No. 3).

Argued October 27, 1944; reargued March 13, 1945. Before BALDRIGE, P. J., RHODES, HIRT, DITHRICH and Ross, JJ. (Reno, J., absent.)

*Dean D. Sturgis* and *J. C. Glassburn,* with them *D. W. Henderson* and *W. F. Lane,* for appellants.

*James I. Marsh,* Special Deputy Attorney General, with him *James H. Duff,* Attorney General, for appellee.

OPINION BY BALDRIGE, P. J., July 19, 1945:

This case is similar in many of its aspects to *Commonwealth v. Rankin et al.,* 158 Pa. Superior Ct. 12, in which an opinion has been filed this day. Section 348 of the General County Law, approved May 2, 1929, P. L.

1278, Art. IV, 16 PS §348, under which the indictments before us were drawn, provides that all contracts made by the county commissioners involving an expenditure of $100 shall be in writing and "no contract shall be made, nor the payment thereof certified, by the controller for over three hundred dollars, unless made with the lowest and best bidder, after due notice to be published by the controller when directed by the commissioners, if he approves the purpose of the proposals invited . . . the controller shall keep a record of all such awards, and shall certify no warrants for contracts not made agreeably thereto."

Indictment No. 78 March Sessions, 1943, contains four counts. The first charges that during 1939 Albert Montgomery, county controller, one of the defendants and appellants herein, in violation of his duties did unlawfully certify warrants for the purchase and payment of 26,800 gallons of gasoline from the Center Gas Company for the use of Fayette County, well knowing that the contract therefor involved a sum in excess of $300, to wit, $4288.00.

The second, third, and fourth counts are practically identical with the first count except they cover the years 1939, 1940, and 1941, and differ in the number of gallons purchased and amounts paid therefor.

Indictment No. 79 March Term, 1943, also contains four counts. The first charges that in 1938 John W. Rankin, Arthur W. Higinbotham, and Michael Karolcik, commissioners in and for Fayette County, did unlawfully contract for, and purchase, the amount of gasoline mentioned in the first count in bill No. 78 from the "Center Gas Company not then and there being the lowest and best bidder, no published notice having been given asking for competitive bids, and no contract for said purchases having been signed and executed in the name of the County of Fayette. . . ."

The second, third, and fourth counts charge the defendants with the same offenses during the years 1939,

1940, and 1941, with a variance in the number of gallons purchased and the amount paid.

The commonwealth produced evidence that the commissioners arranged with the gasoline company to install on the county's property a 1000 gallon tank, and a pump to furnish gasoline for their use. This equipment and all the gas kept in the tank was the property of the gas company. The commonwealth, in an attempt to prove a contract for all the gasoline annually delivered into the tank, called as a witness one of the gas company's officers. He testified: "We were to stand evaporation and spillage and were to be paid for the gasoline as it come out of the tank in which we furnished small slips for that purpose. . . . They [the commissioners] were to use the gasoline and pay us for what came out of the meter. They weren't compelled to use any of it, and at any time we could pull out the equipment and quit, . . . if they didn't want to use it, they didn't have to, but what came out of the pump we were supposed to get paid for it . . ." at the current price of gasoline.

The commonwealth's evidence shows also that there was an arrangement made that whenever an employe of the county needed gasoline, it would be furnished from this tank by an attendant in charge of the garage. A sales slip was made out and the county from time to time would pay these charges. None of these sales slips exceeded the sum of $100. The gasoline thus obtained was charged to the appropriate department for which the car was being used. Notwithstanding a number of sales slips would at times be included in one voucher, the legal character of each transaction did not become illegal by this method of payment. We pointed out in our opinion filed to No. 82 March Sessions, 1943, (158 Pa. Superior Ct. 12), that including in the budget a definite amount to be spent for gasoline in a given year did not constitute a contract. There was no charge in these indictments of any fraud or attempt by the defendants to circumvent or evade the law in purchasing

this gasoline from the company's tank.  No proof was produced that the commissioners obligated the county to buy any stated amount of gasoline, nor can it be reasonably inferred that all the gasoline furnished in any one of the years in question was under a single contract involving an expenditure by the county of more than $300.  Each delivery of gasoline was a separate purchase.

We think the evidence in this criminal action falls short of establishing a violation of the law.

The judgments entered in the court below to Nos. 41, 42, 43, and 44 April Term, 1945, are reversed and the defendants discharged.